UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| EYIDI AMBILA, | ) |
| | ) |
|       Petitioner, | ) |
| | ) |
| v. | )    2:25-cv-00267-NT |
| | ) |
| KEVIN JOYCE, et al., | ) |
| | ) |
|       Respondents. | ) |

**AMENDED ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

The court issues a temporary restraining order, restraining the federal respondents from deporting the petitioner pending further order of the court.

**I.    BACKGROUND**[1]

**A.    Procedural History**

On May 22, 2025, Eyidi Ambila filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pet. for Writ of Habeas Corpus* (ECF No. 1) (*Pet.*). According to the petition, Mr. Ambila is a forty-four-year-old man who has lived in the United States since he was seven years old. *Id.* ¶ 1. Although Mr. Ambila originally came

---

[1] In ruling on the motion as quickly as possible, the Court has done its level best, but the parties should appreciate "the temporal constraints under which the district court labored." *See Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 15 (1st Cir. 2004). As U.S. District Judge Nancy Torresen, the judge assigned this case, was out of the country when the Petitioner filed the motion giving rise to this order, this Judge first became aware of this case at 11:45 a.m. yesterday, held a telephone conference of counsel at 12:30 p.m., and, given the urgency of the circumstances, issued this order at about 2:53 p.m.

In re-reviewing the order, the Court noticed some typographical and clerical errors, which it is correcting in this amended order. In addition, to add clarity to the order and avoid misunderstanding, the Court has elaborated on (1) Mr. Ambila's unclear status as a potential citizen of the Democratic Republic of the Congo and (2) the reason the Court treated the Petitioner's present filing as a motion for temporary restraining order.

from the Democratic Republic of the Congo (DRC), he reports that country has no record of his birth and has denied requests to issue him a passport and other official documents. *Id*.

When Mr. Ambila filed his habeas petition, he was detained in civil immigration custody at the Cumberland County Jail in Portland, Maine. *Id*. ¶ 5. He alleges that he had been detained in U.S. Immigration and Customs Enforcement (ICE) custody for eight months, since September 23, 2024. *Id*. ¶¶ 2, 5. ICE issued an administrative order of removal against Mr. Ambila on February 12, 2007, but the Petitioner claims that the U.S. Department of Homeland Security (DHS) has attempted and failed—for eighteen years—to obtain the travel documents necessary to effectuate his removal. *Id*. ¶ 2. Mr. Ambila alleges that his prolonged detention violates the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act, specifically, 8 U.S.C. § 1231(a). *Id*. ¶¶ 57–65.

As respondents to his petition, Mr. Ambila named the Cumberland County sheriff along with Patricia Hyde, in her official capacity as Acting Director of the Boston Field Office of ICE; Kristi Noem, in her official capacity as Secretary of DHS; and Pamela Bondi, in her official capacity as Attorney General of the United States (jointly, the Respondents). Mr. Ambila's petition requests that the Court assume jurisdiction over the matter, declare that the Respondents' ongoing and prolonged detention of Mr. Ambila violates due process and 8 U.S.C. § 1231(a), and issue a writ of habeas corpus ordering the Respondents to release him immediately. *Id*. ¶¶ 1-65.

The morning of May 27, 2025, Director Hyde, Secretary Noem, and Attorney General Bondi (collectively, the Federal Respondents) filed a response in opposition to Mr. Ambila's petition for writ of habeas corpus. *Return and Resp. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 5) (*Fed. Resp't's Resp.*). The Federal Respondents confirmed that Mr. Ambila was "presently detained" at the Cumberland County Jail in ICE custody pursuant to 8 U.S.C. § 1231 because Mr. Ambila is subject to a final order of removal, but they maintain that he is not entitled to a writ of habeas corpus because his petition is now moot as Mr. Ambila "is confirmed on a flight to the Democratic Republic of Congo for removal in the immediate future." *Id.* at 1-2.

About an hour later, the Petitioner filed a motion to prohibit his transfer to a facility outside the Court's jurisdiction and his removal from the continental United States while this matter proceeds. *Mot. to Prohibit Transfer and Removal or, in the Alt., to Provide Notice Transfer* (ECF No. 6) (*Pet'r's Mot.*). The Federal Respondents opposed the motion on the same day and noted that Mr. Ambila had already been transferred to the ICE Field Office in Burlington, Massachusetts to facilitate his "imminent" removal. *Opp'n to Mot. to Prohibit Transfer and Removal or, in the Alt., to Provide Notice Transfer* (ECF No. 7) (*Fed. Resp't's Opp'n*). Also on May 27, 2025, the Court held a teleconference with counsel for Mr. Ambila and the Federal Respondents to discuss the pending petition and motion. At the conference, counsel for the Federal Respondents reported that Mr. Ambila could be boarding an airplane and departing for the DRC as soon as this afternoon. *Min. Entry* (ECF No. 9).

### B.   Factual Record

Mr. Ambila is a resident alien detained by ICE since September 23, 2024. *Pet.* ¶ 11. He is a forty-four-year-old native of the DRC who has lived in the United States since he was seven years old, when he arrived with his family in 1989. *Id.* ¶¶ 3, 16, 18.[2] He and his family were granted asylum based on political persecution in the DRC. *Id.* ¶¶ 19, 20.

Mr. Ambila was detained by ICE following a felony conviction in December 2005 and was ordered removed to the DRC in October 2006. *Id.* ¶¶ 21, 22. The Board of Immigration Appeals (BIA) denied his appeal of his order of removal in 2007. *Id.* ¶ 23. He was released from ICE custody in August 2007 under an Order of Supervision and lived in the United States under such order from 2007 until 2024. *Id.* ¶¶ 26, 27.

On May 20, 2024, the Petitioner was arrested and placed in state custody, and on September 23, 2025 he was convicted of misdemeanor reckless conduct (class D) and misdemeanor domestic violence assault (class D) as part of a plea agreement at the Cumberland County Superior Court in Portland, Maine. *Id.* ¶ 28. On September 23, 2024, Mr. Ambila completed his criminal sentence and was transferred into ICE

---

[2]   The Court's original order on TRO described the Petitioner as a citizen of the Democratic Republic of Congo. However, the Petitioner's motion for a writ of habeas corpus describes him as both "a 44-year-old citizen of Democratic Republic of Congo," *Pet.* ¶ 16, and alternatively reports "the DRC does not recognize Petitioner as a citizen," *id.* ¶ 3; *accord id.* ¶ 62 ("[Petitioner's] country of origin, Democratic Republic of Congo, has concluded that Petitioner is not a citizen and denied all attempts to obtain a passport or other official documents"). These are contradictory allegations and the Court, consistent with its understanding of the Petitioner's argument that "[he] is stateless," *id.* ¶ 62, amends its prior statement accordingly.

4

custody at Cumberland County Jail, at which time Director Hyde notified him of revocation of release and indicated the Respondents' intent to remove him in the reasonably foreseeable future. *Id.* ¶¶ 29, 30. ICE informed Mr. Ambila that he would be provided with a decision in his custody status review on or about December 22, 2024, but he never received such decision. *Id.* ¶ 31. He has not received any further communications from the Respondents. *Id.* ¶¶ 32-24.

## II.    THE PARTIES' POSITIONS

### A.    The Petitioner's Motion to Prohibit Transfer and Removal

The Petitioner moves pursuant to Federal Rule of Civil Procedure 7(b), requesting the Court use its judicial power to preserve its jurisdiction over the pending habeas petition so as to ensure the Court can evaluate the Petitioner's claims and grant relief as law and justice require. *Pet'r's Mot.* at 1. Specifically, Mr. Ambila moves the Court to "prohibit Respondents from transferring Petitioner to a facility outside of this Court's jurisdiction and from removing Petitioner from the continental United States during the pendency of this proceeding." *Id.* Alternatively, the Petitioner requests the Court order Respondents to provide him, his counsel, and the Court "with at least 2 business days' notice of any scheduled transfer or removal outside of the jurisdiction of the Court." *Id.*

### B.    The Federal Respondents' Opposition

The Federal Respondents oppose the Petitioner's motion. The crux of the Federal Respondents' objection is that, because Mr. Ambila "has already been transferred to the Burlington (Massachusetts) ICE Field Office in order to facilitate

5

[his] removal, which remains imminent," Mr. Ambila's "underlying *Zadvydas* claim remains moot." Fed. Resp't's Opp'n at 1-2 (discussing *Zadvydas v. Davis*, 533 U.S. 678 (2001)).

### III.   LEGAL STANDARD

The Court understands the Petitioner's motion to prohibit transfer and removal to be requesting the Court to temporarily restrain the Federal Respondents from taking such actions. The standard for issuing a temporary restraining order (TRO) is the same as for a preliminary injunction and is provided by traditional equity doctrines. *Aftermarket Auto Parts All., Inc. v. Bumper2Bumper, Inc.*, Civil No. 1:12-cv-00258-NT, 2012 U.S. Dist. LEXIS 143685, *3 (D. Me. Oct. 4, 2012); *accord* 11A WRIGHT, MILLER & KANE § 2942, at 37; *Alcom, LLC v. Temple*, No. 1:20-cv-00152-JAW, 2020 U.S. Dist. LEXIS 79863, at *15 (D. Me. May 6, 2020) (collecting cases).

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *accord Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981) ("The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised")). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).

6

"The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

IV.   **DISCUSSION**

    A.   **Likelihood of Success on the Merits**

        1.   **Jurisdiction**

As an initial matter, the Court concludes that it retains jurisdiction over Mr. Ambila's habeas petition notwithstanding his recent removal to the District of Massachusetts. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Furthermore, "[u]nder habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf." *Mahmoud Khalil v. Joyce*, No. 25-cv-01963 (MEF)(MAH), 2025 U.S. Dist. LEXIS 63573, at *7 (D.N.J. April 1, 2025); *accord Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948).

Here, the parties do not dispute that, when Mr. Ambila filed his habeas petition, he was in custody in the District of Maine. The Court accordingly concludes

7

that it retains jurisdiction over this matter even though the Petitioner is now in custody in the District of Massachusetts.

## 2. The Merits of Mr. Ambila's Habeas Petition

Within the United States Court of Appeals for the First Circuit, a likelihood of success on the merits is both the "sine qua non" and the "most important part of the preliminary injunction assessment"; the First Circuit has explained that "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 7-10 (1st Cir. 2012) (quoting *Jean v. Mass. State Police*, 492 F.3d 24, 27 (1st Cir. 2008); *New Comm Wireless Servs. Inc. v. SPrintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)). To carry his burden on this factor, a plaintiff "must establish a 'strong likelihood' that he will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores*, 699 F.3d. at 10 (quoting *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)). Mr. Ambila brings his habeas petition for violation of his Due Process rights under the Fifth Amendment to the federal Constitution and of 8 U.S.C. § 1231(a) pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001); the Court thus considers Mr. Ambila's likelihood of success on these claims.

The *Zadvydas* Court unequivocally held that, after an alien subject to removal has been detained for six months and has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Here, the Petitioner has provided ample support for his

8

belief that there is no significant likelihood of removal in the reasonably foreseeable future based on his and DHS's failed attempts to obtain a Congolese passport and travel documents necessary for his removal over the eighteen-year history of Mr. Ambila's removal proceeding. *Pet.* at 8 (citing *id.*, Attach. 1, *Appl. Form for a Substitute for Passport*; *id.*, Attach. 2, *Minister of Foreign Affairs Statement on Current Passport Req. in the Dem. Rep. Congo*; *id.*, Attach. 3, *Passport Req. Form*). In contrast, the only evidence of removal in the reasonably foreseeable future provided by the Government is the declaration of Mr. Chan, which Mr. Ambila "is confirmed on a flight to the Democratic Republic of Congo for removal in the immediate future. The Petitioner's removal is imminent." *Fed. Resp't's Resp.*, Attach. 1, *Decl. of Assistant Field Office Director Keith M. Chan* ¶ 7.

Based on the evidence in the record, the Court concludes that the Petitioner has evidenced a likelihood of success on his claim, as the Government has not produced evidence of a Congolese passport for Mr. Ambila or other travel documents demonstrating the temporal imminency of his travel, nor has it provided evidence indicating the DRC has consented to Mr. Ambila's removal there. Without such evidence, the Court cannot reach the conclusion that the Petitioner's removal to the DRC is significantly likely to occur in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701.

### B. Likelihood of Irreparable Harm

Mr. Ambila argues that it is important for the Court to preserve its jurisdiction over the pending habeas petition until the Court has the opportunity to evaluate his

9

claims. He maintains that the Court must prohibit the Federal Respondents from removing Mr. Ambila to "(1) preserve existing conditions and the potential jurisdiction of the Court over pending matters while the Court determines the scope of its authority to grant the requested relief; (2) to ensure Petitioner[ ] are able to participate in the adjudication of their requests for habeas relief, including participation in court proceedings and access to legal counsel for such purpose; (3) to ensure the Court is able to evaluate their respective claims for relief based on their in-court testimony that may be offered; and (4) to ensure the Government has a fulsome opportunity to brief and present arguments in its defense." *Pet'r's Mot.* at 2 (quoting *Standing Order 2025-01, In re: Pets. for Writs of Habeas Corpus—Alien Detainee*, Misc. No. 00-308 (D. Md. 2025)). During the teleconference with the Court, the Federal Respondents argued that a TRO prohibiting Mr. Ambila's deportation would run counter to the relief Mr. Ambila requested in his petition because it would mean that Mr. Ambila would be detained longer. Counsel reiterated that Mr. Ambila might be imminently boarding a plane for the DRC.

      The Court concludes that Mr. Ambila has demonstrated its likelihood of irreparable harm absent temporary injunctive relief. The Federal Respondents have stated Mr. Ambila will be put on a plane any minute now. Absent a TRO, Mr. Ambila faces irreparable harm because it will be difficult to get Mr. Ambila back to the United States for the remainder of this proceeding.

10

### C. The Balance of the Equities and the Public Interest[3]

Finally, upon consideration of the last two factors, the balance of the equities weighs in favor of granting the Petitioner's TRO, and a TRO would serve the public interest. To obtain preliminary injunctive relief, a petitioner must also show "the balance of equities tips in [its] favor." *Winter*, 555 U.S. at 20. This involves weighing "the balance of relevant hardships as between the parties." *Vaqueria Tres Monjitas, Inc. v. Fabre Laboy*, 587 F.3d 464, 482 (1st Cir. 2009). Furthermore, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Here, as discussed above, the hardship to Mr. Ambila absent a TRO is obvious: if his removal does not comply with due process, he risks removal to an uncertain destination, on an uncertain timeline, through unspecified means. The relative hardship to the Federal Respondents, in contrast, is slight. Furthermore, in cases implicating removal, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009); *accord D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 U.S. Dist.

---

[3] The Supreme Court has instructed that the last two factors in the TRO analysis "merge when the Government is the party opposing the [TRO]"; the Court follows this instruction and reviews the balance of the equities and the public interest in tandem. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

11

LEXIS 74197, at *54 (D. Mass. April 18, 2025) (same). While there is also "a public interest in prompt execution of removal orders," *Nken*, 556 U.S. at 436, the Supreme Court has confirmed that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021); *see also NFIB v. Dep't of Labor,* 595 U.S. 109, 120-21 (2022) (staying an illegal vaccine mandate even though the Government said the mandate would save more than 6,500 lives); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952) (affirming district court's preliminary injunction of an illegal executive order even though a wartime president said his order was "necessary to avert a national catastrophe"). Further, "[t]he fact that [Plaintiff] has shown a likelihood of success on the merits strongly suggests that a TRO would serve the public interest." *New York v. Trump*, No. 25-cv-39, 2025 U.S. Dist. LEXIS 17593, at *17 (D.R.I. Jan. 31, 2025); *accord League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations") (internal quotation marks omitted). Thus, these final factors in the analysis lean in the Petitioner's favor.

## V.     LIMITATIONS OF RELIEF

"[An] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). Here, the "irremediable" injury would be deportation without due process, notice, and a meaningful opportunity to be heard.

Accordingly, the Court circumscribes its remedy, at this time, to preventing the U.S. Department of Homeland Security from removing Mr. Ambila from the continental United States before the Court has had the opportunity to issue a ruling on his habeas petition. *See, e.g.*, *Lynch v. Dukakis*, 719 F.2d 504, 514 (1st Cir. 1983) ("The 'principles of equity jurisprudence' suggest that 'the scope of injunctive relief is dictated by the extent of the violation established . . . [and] the relief afforded [may not be] more burdensome than necessary to redress the complaining parties'") (citing *Califano v. Yamasaki*, 442 U.S. 682, 702, (1979); *Milliken v. Bradley*, 433 U.S. 267, 280-81 (1977)).

## VI.  BOND REQUIREMENT

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c).  The First Circuit has explained "[t]he purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined." *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("The bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction").

The First Circuit has previously indicated "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond," *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) (collecting cases), but the district courts in this circuit have generally required a bond to be posted. *See WEX Inc. v. HP Inc.*, No. 2:24-cv-00121-JAW, 2024 U.S. Dist. LEXIS 119715, at *99-100 (D. Me. July 9, 2024) (collecting cases). At the May 27, 2025 conference of counsel, the Government represented that, should the Court grant the Petitioner's motion to prohibit Mr. Ambila's transfer or removal, it would seek the posting of bond authorized under Rule 65.

District courts are vested with "wide discretion" to set the amount of the bond. *Axia NetMedia*, 889 F.3d at 11; *accord Totem Forest Prods. v. T & D Timber Prods.*, No. 2:17-cv-00070-JDL, 2017 U.S. Dist. LEXIS 26062, at *5 (D. Me. Feb. 24, 2017) ("The Court has discretion to determine the amount of the security"). Typically, in determining the appropriate amount of bond, district courts consider "the potential incidental and consequential costs as well as [] the losses the unjustly enjoined or restrained party will suffer during the period the party is prohibited from engaging in certain activities." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2954 (3d ed. 2013); *accord WEX Inc.*, 2024 U.S. Dist. LEXIS 119715, at *99-100. However, the First Circuit has recognized a trend in "suits to enforce important federal rights or 'public interests'" to not require posting of a substantial bond. *See Crowley v. Local No. 82, Furniture & Piano Moving,*

679 F.2d 978, 999-1000 (1st Cir. 1982) (collecting cases), *rev'd on other grounds*, 467 U.S. 526 (1984); *accord Sanchez*, 2010 U.S. Dist. LEXIS 9942, at *36-37 ("As recognized by the First Circuit in *Crowley v. Local No. 82, Furniture & Piano Moving*, there is a trend in 'public interest' litigation to only require nominal security or to completely dispense with the security requirement"). This trend extends to other federal courts. *See, e.g.*, *Alabama ex rel. Baxley v. Corps of Eng'rs of U.S. Army*, 411 F. Supp. 1261, 1275-76 (N. D. Ala. 1976) (collecting cases); *South Carolina v. United States*, 329 F. Supp. 3d 214, 238 n.35 (D.S.C. 2018) (same), *vacated on other grounds*, 912 F.3d 720 (4th Cir. 2019); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, Civ. No. ABA-25-0333, 2025 U.S. Dist. LEXIS 31747, at *85 (D. Md. Feb. 21, 2025).

The *Crowley* Court provided a three-factor test to aid the district court's determination of whether to impose a substantial bond requirement: (1) "the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant"; (2) "the impact that a bond requirement would have on the enforcement of a federal right"; and (3) whether the likelihood of success on the merits of the claims at issue is "extraordinarily high." *Crowley*, 679 F.2d at 1000 & n.25; *accord Sanchez*, 2010 U.S. Dist. LEXIS 9942, at *37.

Applying these factors to the case at bar, the Court concludes that a nominal bond is appropriate. It is true that the temporary restraining order risks a harm to the Government by temporarily foreclosing its ability to deport Mr. Ambila. However, the ultimate costs associated with the Government's action are too complex to

calculate in this expedited proceeding and imposition of a substantial bond would plainly have a significant effect on Mr. Ambila's assertion of his federal right to due process. Accordingly, the Court will require the Plaintiff to post a bond of $100 within 48 hours of the issuance of this Order pursuant to Federal Rule of Civil Procedure 65(c).

## VII.  CONCLUSION

The Court ORDERS that the Federal Respondents in this matter are hereby ENJOINED from removing Eyidi Ambila from the United States of America pending further order of this Court. The Court will schedule a further conference of counsel as soon as it becomes clear whether this order has been effective in its relief.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of May, 2025