UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| EYIDI AMBILA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KEVIN JOYCE, )<br>*Sheriff,* )<br>*Cumberland County*, et al., )<br>)<br>Defendants. | 2:25-cv-00267-SDN |

**<u>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS</u>**

On May 22, 2025, Petitioner Eyidi Ambala filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. He claimed that his prolonged detention in federal immigration enforcement custody violated the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a). *Id*. at 14. On January 22, 2026, the Court concluded his detention was unlawful and ordered his immediate release. ECF No. 44. This Order fully sets forth the Court's reasoning.

### I.   Procedural History

Mr. Ambila is a noncitizen who has lived in the United States since the age of seven. ECF No. 1 at 1. He was born in the Democratic Republic of the Congo ("DRC") but has no official birth record there. *Id*. In October 2006, an Immigration Judge ordered his removal to the DRC, and the Board of Immigration Appeals ("BIA") upheld the final removal order in 2007. *Id*. at 5. He was released under an Order of Supervision[1] ("OSUP") in 2007 and continued to live in the United States. *Id*. at 6. In 2018, Mr. Ambila submitted

---

[1] In March 2007, the Department of Homeland Security ("DHS") sought travel documents for Mr. Ambila's removal to the DRC, but it never received the documents from the Congolese government. ECF No. 1 at 8.

a written passport application to the DRC's Ministry of Foreign Affairs, which was denied because the country had no record of his birth or presence in the country, rendering him "stateless." *Id*. at 8. In 2020, he applied to the DRC a second time and was denied again. *Id*. In 2024, after a state arrest and conviction for misdemeanor crimes of reckless conduct and domestic violence, Mr. Ambila was transferred to Immigration and Customs Enforcement ("ICE") custody at the Cumberland County Jail in Portland, Maine. *Id*. He remained there from September 23, 2024, until his release by this Court's order on January 22, 2026, which totaled almost one year and four months of detention.

Mr. Ambila filed his habeas petition on May 22, 2025—eight months after ICE took him into custody. ECF No. 1. Relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001), he argued that his continued detention had become unlawful because there was no reasonably foreseeable prospect of his removal, due in part to the Government's inability to secure travel documents from the DRC.

On May 27, 2025, just days after he filed his habeas petition, ICE transferred him to the Burlington, Massachusetts, ICE facility and informed him that he was to be deported to the DRC "imminently"; on May 29, 2025, he learned the federal government had obtained a temporary travel document that would ostensibly grant him entry to the DRC, and he was booked on a flight to the DRC. *See* ECF No. 5-1 at 2. Mr. Ambila sought a temporary restraining order ("TRO") blocking his removal to the DRC in this Court, ECF No. 6, claiming the travel document did not ensure DRC's acceptance or recognition of his status, and that he likely would be tortured or killed due to his statelessness, ECF No. 24 at 2. The Court granted the TRO, noting the failed efforts to obtain a Congolese passport and travel documents for eighteen years. ECF No. 11 at 8–9.

The Court subsequently issued an order to show cause as to why Mr. Ambila's habeas petition should not be granted. ECF No. 16. In response, the Government asserted Mr. Ambila's detention was lawful due to his imminent removal evidenced by the booked flight, *see* ECF No. 18-1, and because the Congolese embassy had issued a temporary travel document entitled "Laissez-Passer Standing Instead of Passport,"[2] *see* ECF No. 18-2. However, Petitioner presented evidence to the Court from an expert that his stateless status posed risks of torture or death upon removal to the DRC.

In June 2025, Petitioner moved in this Court for a stay of his habeas proceeding and that his hearing be "postponed for good cause pending adjudication of his emergency motions by the [BIA]." ECF No. 24 at 1–2. He had filed two motions with the BIA in light of the expert's report that he could be harmed upon his return to the DRC: a Motion to Reopen and a Motion for Stay of Removal. *See* ECF No. 23-1. The requests were received by the BIA on June 2, 2025. *Id*. On June 9, 2025, this Court agreed to postpone Mr. Ambila's habeas hearing per his request. ECF No. 29.

On October 3, 2025, Mr. Ambila filed a supplemental ineffective assistance of counsel claim with the BIA. ECF No. 36 at 1. On October 14, 2025, he learned that the BIA had denied his Motion to Reopen in August 2025, although he claimed he had not received a copy of the denial. *Id*. at 2. He then challenged the BIA's denial of his Motion to Reopen before the First Circuit Court of Appeals. *Id*. On December 12, 2025, the Government requested the First Circuit hold the case in abeyance pending a BIA decision on a motion to reissue the denial with an updated date. ECF No. 40.

---

[2] The document, which was issued on March 17, 2025, expired after September 16, 2025. ECF No. 18-2.

On January 22, 2026, the Court held oral argument on the current status of Mr. Ambila's immigration cases and on the merits of his unlawful detention argument. ECF No. 42. At the hearing, Petitioner requested the Court release the stay on the habeas proceedings and grant the Petitioner's habeas request. The Government opposed the motion.

## II. Analysis

Section 1231(a) of the Immigration and Nationality Act ("INA") authorizes DHS to detain noncitizens once their final order of removal becomes "administratively final."[3] 8 U.S.C. § 1241(a)(1)(B)(i). The statute requires that removal occur within a 90-day period, after which detention may continue only in limited circumstances. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (citing 8 U.S.C. § 1231(a)(1)(A)). After the period expires, the Government has discretion to detain only four categories of people: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id*. at 579 (quoting 8 U.S.C. § 1231(a)).

Although the detention statute does not provide a specific time frame for how long a person may be discretionarily detained after the 90-day period, the Supreme Court interpreted Section 1231(a) to mean that the statute "does not permit indefinite detention"; it instead "limits a[] [noncitizen's] post-removal-period detention to a period

---

[3] For the purposes of this Order, the Court finds Mr. Ambila's 2007 final order of removal is "administratively final" despite his stayed case before the First Circuit challenging the denial of the Motion to Reopen. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) ("By using the word 'administratively,' Congress focused our attention on the agency's review proceedings, separate and apart from any judicial review proceedings that may occur in a court."). Additionally, both Parties conceded at oral argument that the open First Circuit case has no bearing on the habeas petition before this Court.

reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. To obtain release, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. The burden then shifts to the Government to "respond with evidence sufficient to rebut that showing." *Id*.

Although the Government argued at oral argument that Mr. Ambila's excessively long detention was based in part on his own actions in requesting a TRO from this Court prohibiting his removal from the U.S. despite being booked on a flight in May 2025 and thereafter requesting a stay from this Court on his habeas petition, the Government also conceded that Mr. Ambila already had been detained for over eight months before filing his habeas petition, exceeding the *Zadvydas* six-month threshold.[4]

To succeed on his habeas claim, *Zadvydas* imposes a minimal burden on Mr. Ambila to produce good reason to believe his removal is not imminently foreseeable.[5] The Court finds Mr. Ambila provided two key pieces of evidence supporting his claim.

First, the temporary travel document the Government provided expired on September 16, 2025, and the Government was not able to make assurances to the Court as to how long it would take to secure a replacement. Previously, Mr. Ambila entered ICE custody in September 2024, but the travel document was not issued until six months later in March 2025, and was not provided to Mr. Ambila until two months after that, in May

---

[4] Under 8 U.S.C. § 1231(a)(1)(B)(iii), Mr. Ambila's 90-day removal period began when he was released from state custody in September 2024. *See* 8 U.S.C. § 1231(a)(1)(B)(iii) ("The removal period begins on the latest of the following: . . . If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.").

[5] *See Singh v. Whitaker*, 362 F. Supp. 3d 93, 101 (W.D.N.Y. 2019), *abrogated on other grounds by Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032 (W.D.N.Y. Nov. 4, 2025) ("[T]he burden upon the detainee is not to 'demonstrate' no reasonably foreseeable, significant likelihood of removal or 'show that his detention is indefinite'; it is something less than that." (quoting *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 404 (W.D.N.Y. 2009)).

5

2025. Where there is a lack of evidentiary support in the record as to how long a travel document could take to issue, courts have been hesitant to find that imminent issuance of the document is reasonably foreseeable. *See, e.g.*, *Abubaka v. Bondi*, No. C25-1889, 2025 WL 3204369, at *4 (W.D. Wash. Nov. 17, 2025) (finding "petitioner has sufficiently shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future given the uncertain and protracted process for procuring travel documents" (quotation modified)). The Government should not be permitted to hold Mr. Ambila indefinitely while it seeks new travel documents that may or may not be sufficient to facilitate his removal to the DRC. *See Tran v. Bondi*, No. C25-01897, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) ("ICE is not permitted to hold [petitioner] indefinitely while it waits for travel documents from [the third country].").

Second, Mr. Ambila has adduced significant evidence in the record—in the form of a detailed expert report from a scholar on the political situation in the DRC—to suggest he faces imminent harm if he were to return to the DRC under these documents as a stateless individual. Furthermore, the record does not indicate whether the DRC would recognize Mr. Ambila's continued residence in the country once the temporary travel document expires. Both of those issues are of exceptional concern to the Court.

The Government has failed to rebut Mr. Ambila's assertions that his removal is not reasonably foreseeable. The Government has not submitted competing expert testimony or reports as to the credibility and sufficiency of the temporary travel documents for Mr. Ambila's future permanent residency in the DRC, nor has it been able to speak to the political situation Mr. Ambila might face upon his return. As of January 22, 2026, the Government had not even begun the process of seeking new, unexpired travel documents to facilitate his removal. *See Do v. Scott*, 25-cv-02187, 2025 WL 3470327, at *5–6 (W.D.

6

Wash. Dec. 3, 2025) (granting petitioner's *Zadvydas* claim where the record "does not show that a completed travel document request has been submitted," only that the government was preparing to submit one); *Abubaka*, 2025 WL 3204369, at *5 (same).

### III.   Conclusion

The Court finds Mr. Ambila has demonstrated "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Government has failed to rebut this evidence.[6]

Therefore, the Court **GRANTS** Mr. Ambila's verified petition for a writ of habeas corpus. ECF No. 1. As previously ordered on January 22, 2026, the Court **ORDERS** that Mr. Ambila shall remain out of custody, subject to any necessary conditions of release. The Court further **ORDERS** the Respondents not to re-detain Mr. Ambila absent a showing of changed circumstances for his re-detention. Nothing in this Order should be construed to prevent the Respondents from pursuing removal efforts in accordance with the law.

SO ORDERED.

Dated this 24th day of January, 2026.

/s/ Stacey D. Neumann
UNITED STATES DISTRICT JUDGE

---

[6] Because Mr. Ambila's requested relief is granted under *Zadvydas*, the Court does not reach the merits of his due process claim. *See Dupont v. Meserve*, No. 25-CV-00593, 2026 WL 74112, at *3 (D. Me. Jan. 9, 2026) ("Finding [petitioner] has offered the Court good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future and that Respondents have failed to rebut those good reasons [under *Zadvydas*], the Court need not address [petitioner's] due process or third country removal claims at this time.").

7